GEORGE CLESAS *vs.* HURLEY MACHINE CO.

PEDRO CLESAS p. a. *vs.* SAME.

SAME. *vs.* ELECTRIC HOUSEHOLD UTILITIES CORPORATION.

GEORGE CLESAS *vs.* SAME.

DECEMBER 11, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J. These are actions of trespass on the case for negligence in which one question of law only is presented.

The plaintiffs—a father and his minor son—are residents of the city of Providence. The defendants are corporations organized under the laws of the State of Illinois. Writs of summons were served in Providence on the chief clerk of the State Board of Public Roads in pursuance of the provisions of Public Laws 1927, Chapter 1050.

Each declaration alleges that defendant did cause to be operated and did operate a motor vehicle by its agent, servant or driver upon Washington street in Providence so negligently that it ran into and injured Pedro Clesas. Each defendant filed a plea in abatement to the jurisdiction of the Superior Court alleging that the motor vehicle involved in the accident was owned by a resident of the State of Rhode Island and was registered by this state as the property of and in the name of said owner, that said motor vehicle was driven and operated by a resident of this state under the authority of a license to operate motor vehicles issued to said driver by the State Board of Public Roads of this state. Demurrers to these pleas were overruled and the cases are in this court on plaintiffs' bills of exceptions. The question is with respect to the legality of the service of the writs and the jurisdiction of the Superior Court over these defendants.

Chapter 98, G. L. 1923, "Of Motor Vehicles and the Operation Thereof" is an enactment under the police power of the state to promote the safety of the public. The first regulatory statute (P. L. 1904, Ch. 1157) required a registration by the owner or person in control of a motor vehicle to be issued by the Secretary of State and forbade the operation thereof without registration; there was no express requirement of any license for the operator. Chapter 1157 was repealed in 1908 by the enactment of a more compre-

hensive statute (Ch. 1592, P. L. 1908) in which it was expressly provided (Sec. 1—Definitions) that the term "Registration" as used in the statute has reference to the vehicle and that registration of the vehicle does not carry with it the right to operate the vehicle. Also (Sec. 1—(4)) "License" has reference to the operator; each person who operates a motor vehicle must have an operator's license; Sec. 7 prohibited the operation without registration and a license to operate. The requirements of the statutes since 1908 are that a motor vehicle to be used on a public highway must be suitable and safe for operation, be registered and the operator thereof must be qualified and licensed to operate a motor vehicle. The operation of a motor vehicle in this state without a registration and a license by this state is prohibited except as permitted by Sec. 14, Ch. 1050, P. L. 1927, an amendment to Sec. 14, Ch. 98, G. L. 1923. Use and operation of a motor vehicle, as thus appears, is either authorized or unauthorized. It is a misdemeanor to use or operate an automobile without lawful authority.

Section 14 authorizes a limited use in this state of motor vehicles by certain nonresidents. The term "nonresident" as it is used in Sec. 14 is defined therein as a resident of any state or country outside of this state who has no regular place of abode or business in this state for more than thirty days in the calendar year. The statute provides that such a nonresident may bring his motor vehicle into this state for use on its highways without complying with the provisions of the General Laws for the registration of the vehicle and the licensing of the operator, if he shall have complied with the laws of the country in which he resides requiring the registration of motor vehicles, provided that the operator of the motor vehicle of any nonresident is duly licensed under the laws of the country in which he resides and provided also that the state or country in which said nonresident resides shall grant like privileges to residents of this state.

The act further provides that the acceptance by a non-

resident of the rights and privileges conferred by this section, as evidenced by the operation of a motor vehicle thereunder by such nonresident, his agent or servant, or the operation by a nonresident, his agent or servant, of a motor vehicle on a public highway in this state other than under this section, shall be deemed equivalent to an appointment by such nonresident of the chief clerk of the State Board of Public Roads to be his attorney for the acceptance of process in any action against said nonresident growing out of any accident in which said nonresident, his agent or servant, may be involved while operating a motor vehicle on such way; and that the service of such process shall be made by leaving a copy thereof with said chief clerk and the sending of a copy of the process by registered mail to the defendant. Plaintiffs contend that, if the relationship of principal and agent or master and servant did exist between a defendant and the operator of the motor vehicle which figured in the accident, such defendant comes within the category of nonresident operators under the provisions of Chapter 1050 upon whom substituted service of process may be made, and the fact that such defendant was neither the owner nor the licensed operator of the motor vehicle is immaterial.

Some of the provisions of Section 14 for substituted service of process are not entirely clear. But any uncertainty regarding the legislative intent with respect to cases like these disappears upon consideration of the whole statute and of the earlier statutes regulating motor vehicles and their operation.

The acceptance by a nonresident of the privileges conferred by Section 14 clearly refers to an acceptance by a nonresident owner as the required foreign registration is that of the owner. Section 14 also provides that the right of any nonresident "to operate or have his car upon the highways of this state in accordance with this section" may be suspended or revoked for any cause. The provision in the same clause that the acceptance by a nonresident of

the privileges conferred by Section 14 or the operation by a nonresident other than under said section shall be deemed equivalent to the appointment of a local official for acceptance of service of process does not differentiate the nonresidents referred to. On the contrary the conclusion is reasonable that the word "nonresident," when used in this statute, has the same legal meaning. It is not necessary however to define the scope of the statute beyond the requirements of the immediate question. The statute does not impose any new civil liability on nonresidents. It is the right to sue in this state, not a right of recovery, which is provided for.

A court cannot take jurisdiction in an action against a nonresident person who owns no property in the state and upon whom no personal service has been had within such state, unless there is a voluntary appearance or consent to such jurisdiction. The mere transaction of business in a state by a nonresident person does not imply a consent to be bound by the process of its courts. The power of a state to exclude foreign corporations is the basis on which the implication of consent to be bound by substituted service is supported as to them. *Flexner* v. *Farson*, 248 U. S. 289. If the defendant corporations are doing business in this state a writ of summons may be served on them, as Sec. 4, Ch. 350, G. L. 1923, provides for the service of a writ of summons on a foreign corporation doing business in this state by service thereof on the clerk, agent or attorney appointed under the law, of such corporations.

In *Hess* v. *Pawloski*, 274 U. S. 352, a state statute, which provided for substituted service on a nonresident driver of a motor vehicle in said state, was held not to be in violation of the due process of law provision in the Federal Constitution; also that as the state has the power to regulate the use of its highways by nonresidents, as well as by residents, the state may exclude the operation of a motor vehicle on its highways by a nonresident until the appointment is made of one of its officials on whom process may

be served in proceedings arising from such use. Speaking of the statute then in question, the court said that the implied consent to substituted service of a nonresident thereunder was limited to proceedings growing out of accidents on a highway in which the nonresident may be involved. In the *Hess* case, as thus appears, the validity of an implied consent to be bound by a substituted service in a motor vehicle accident case is based on the use by a nonresident of the state highway, which without such consent would be unauthorized.

The motor vehicle involved in this accident was lawfully used and operated by express authority given by this state. No other authority was necessary. The right to operate the motor vehicle was not dependent on the consent of the employer or principal. In the circumstances Section 14 as amended by Chapter 1050 is not applicable. It is a supplementary enactment to the general requirements of registration and license by this state.

As these defendants have not accepted nor made use of any privilege given them by this state, there is no basis for the application of the principle of implied consent to a substituted service of process.

The exceptions of the plaintiffs are overruled. The cases are remitted to the Superior Court for further proceedings.

*Walter I. Sundlun, Baker & Spicer,* for plaintiffs.

*Greenough, Lyman & Cross, Harvey S. Reynolds,* for defendants.